CHARLES C. NEWELL, *Administrator of* AMASA W. NEWELL, *v.* CHARLES T. A. HUMPHREY.

*Account. Partnership. Pleading.*

The action of account may be maintained at common law by the representative of a deceased partner against the surviving member of a co-partnership; nor is it interdicted by our statutes on the subject, they having been passed not for the purpose of limiting the action to the cases enumerated, but to extend it to certain cases where it did not lie at common law.

The plaintiff's intestate and defendant entered into a joint enterprise for buying stock on commission, under an agreement that the intestate's commissions should be paid to a firm, of which the defendant was a member, in liquidation of a debt that the intestate owed the firm. This action was brought to recover the intestate's commissions. After his death said firm presented their claim for said debt to the commissioners and the same was allowed, the firm giving no credit for the intestate's commissions in the hands of the defendant, *Held,* that this

18

was a waiver of the defendant's right to insist on said agreement as a defence to this action.

The plaintiff is entitled to recover for commissions on purchases incomplete at the intestate's death, but carried out subsequently by the defendant, in respect to which the partners in said enterprise had spent time and incurred expense prior to the intestate's death.

TRUSTEE PROCESS.    The auditor reported that Amasa W. Newell, the plaintiff's intestate, and the defendant, in June, 1862, entered into a joint enterprise of buying sheep and lambs and cattle on commission for one Wm. F. Ruggles, of Sutton, which was to continue during the season of that business.   They agreed to buy jointly and divide the commissions equally.

The intestate died on the 20th day of September, 1862, previous to which the defendant and intestate, together or separately, had canvassed certain territory agreed upon, and had ascertained of whom purchases could be made, had made purchases and delivered to Ruggles, had made purchases without delivery, and in some cases had merely ascertained the probable number of purchases which could be made, when the parties were ready to sell, without completing them.   After the death of the intestate, the defendant, assisted by Oliver W. Newell, a brother of the intestate and minor son of the plaintiff, proceeded to collect and deliver sheep to Ruggles, in the same manner as in the life of the intestate, until the 17th day of October following.

The plaintiff charged the defendant for one-half of the commissions of all purchases and deliveries made up to October 17th, 1862.

The auditor found that the business in which the parties engaged, continued that season until October 17th, 1862; that what was done by the defendant and Oliver in the delivery to Ruggles, after the intestate's death, up to October 17th, 1862, was the legitimate and regular business of the season, for which the enterprise of the parties was undertaken, and that, in the purchases subsequently completed, negotiations had been made by the defendant or intestate previous to Newell's death.

The defendant made no difference between purchases and deliveries after the intestate's death and those made before in the manner of keeping his accounts and making deliveries to Ruggles,

Newell, Adm'r, v. Humphrey.

After the business was through, the defendant, without the knowledge of the plaintiff settled with Oliver and paid him what was satisfactory to Oliver, and what was a reasonable compensation for his services.

It appeared that the intestate at the time of forming the partnership was indebted to the firm of Humphrey & Smith, of which the defendant was a member, to the amount of some two hundred dollars; that the defendant and intestate agreed to buy sheep and cattle together, the intestate's commissions to be applied on the Humphrey & Smith debt, and in consideration of said application, Humphrey & Smith agreed to admit him into partnership with them when said debt was paid. This fact appeared from the testimony of Humphrey & Smith, and from an exhibit of their account, but previous to being sworn Smith transferred his interest in the claim of Humphrey & Smith against the intestate to the defendant.

No settlement or application of commissions was made by the intestate and the defendant. The commissions remained in the hands of the defendant at the time of the intestate's decease.

The auditor allowed on the basis of the plaintiff's claim as follows:

| | | |
|---|---|---|
| Whole amount of commissions to October 17th, 1862, | | $284.00. |
| Pro rata allowance for license, | $1.25. | |
| Defendant's account for expenses, | 130.00. | |
| "        "    for time, | 20.00. | |
| Whole amount of defendant's allowance, | | $151.25. |
| Balance to be divided, | | $132.75. |

One-half of which, with interest, and the balance of the intestate's undisputed account amounted to $102.97.

Upon the defendant's ground of accounting the auditor found as follows:

| | |
|---|---|
| Whole amount of commission, | $146.83. |
| Defendant's account, | 65.12. |
| Balance to be divided, | $81.21. |

One-half of which, with interest and the intestate's account amounted to $75.78.

Upon the report of the auditor the court, at the December Term, 1863, POLAND, Ch. J., presiding, rendered judgment for the plaintiff for the larger sum reported,—to which the defendant excepted.

*G. C. & G. W. Cahoon,* for the defendant.

I. By the death of one of the partners the partnership is *ipso facto* dissolved. Collier on Part. 59, 113 ; Watson on Part., p. 263 ; 3 Baylis' Dig. index, p. 369, § 4 ; 15 John. 15 ; Story on Part., ch. 5, § 1, pp. 219, 220, 3d ed. ; *Gillipine* v. *Hamilton,* 3 Madd. 254 ; *Scholefield* v. *Taylor,* 7 Peters, 586.

The partnership was dissolved by the death of Newell, and the defendant is not bound to account for purchases made subsequently, and "in taking the partnership accounts, it is mainly to be considered what was the value of the joint property, and what the amount of the joint debts at the time of the dissolution." Collier on Part. p. 171.

II. Humphrey and Smith were competent witnesses.

III. We insist that the offset was a legal one, made so by the terms of their partnership agreement, and therefore should have been offset against the claim of the intestate. Collier on Part. p. 447, and cases cited ; *Meader* v. *Scott,* 4 Vt. 26 ; *Meader* v. *Leslie,* 2 Vt. 569 ; *Ferris et al.* v. *Burton,* 1 Vt. 439 ; *Foot* v. *Ketchum et al.,* 15 Vt. 258 ; *Downer* v. *Dana et al.,* 17 Vt. 518.

*Bartlett & Thacher,* for the plaintiff.

PECK, J. It is objected that the action of account cannot be maintained by the representative of a deceased partner against a surviving member of the co-partnership. It is urged by the defendant's counsel, that as the statute of 1852 on the subject of actions of account between partners does not mention executors and administrators, such legal representative cannot maintain such action. Our statutes on the subject of the action of account were not passed for the purpose of limiting the action to the cases enumerated, but to extend the action in certain cases where it did not lie at common law. The action of account between partners exists at common law. The object of the act of 1852 was to enable a partner to sustain this action where there were more than two partners, having separate and distinct interests, which could not be done at common law by reason of the inability of a court of law to render several and distinct judg-

ments in one action. The action lies in this case without the aid of that statute, and survives to the administrator. There is another reason why this objection cannot avail the defendant. He has submitted to a judgment to account, and had the case tried on the merits before the auditor, and cannot now raise this objection. Nor does it appear that this question was raised in the county court. The defendant cannot for the first time raise this technical objection in this court under a general exception to the decision of the county court rendering judgment for the plaintiff on the report.

The defendant claims that upon the facts reported the balance found due the intestate cannot be recovered; that it should be applied on the debt the intestate owed Humphrey & Smith, (of which firm the defendant was a member). The auditor finds an agreement for such application, and that that debt is still unpaid. It is insisted by the plaintiff's counsel, that as that contract was executory, and no application had been made on the Humphrey & Smith demand at the intestate's death, it cannot be set up to defeat the action brought by the administrator. But as the defendant has received the plaintiff's share of the profits, the contract is so far executed that the administrator could not collect the fund from him in violation of that agreement, if nothing further appeared. But it is conceded by counsel and treated as a fact in the case, that Humphrey & Smith presented and had allowed the whole of their claim against the intestate before the commissioners on the intestate's estate. It is true that the administrator did not present this claim in offset before the commissioners. It does not appear that he knew of any agreement to make such application. No plea in offset is necessary in such case. The debts are not mutual debts between the same parties. The right to make the application rests on the agreement; and if the defendant wished to avail himself of the agreement, he ought to have presented it and had the application made before the commissioners. The recovery of the whole claim of Humphrey & Smith before the commissioners, and the omission to give credit for the fund in the hands of Humphrey, is a waiver of the defendant's right to insist on that agreement as a defence to this action. This view of the case renders it unnecessary to decide the question which has been discussed as to the competency of Humphrey & Smith

to prove the agreement, the other party to the agreement being dead.

The remaining question is, which of the sums reported by the auditor is the plaintiff entitled to recover? It appears that the intestate died September 20th, before the close of the business season during which the copartnership by its terms was to continue. The report shows that previous to the intestate's death the partners had made purchases and deliveries, and had incurred expense and spent time in relation to incomplete purchases which they had in contemplation, and which were carried out by the defendant after the intestate's death. The auditor finds that what was done after the intestate's death, in delivering to Ruggles, was the legitimate business of the season for which the enterprise of the parties was undertaken, and that in the purchases subsequently completed, negotiations had been made by the defendant or the intestate previous to the intestate's death. The defendant claims that he should not be charged with any part of the commissions on deliveries under purchases that had not been completed by payment of money previous to the death of Newell. On this basis the auditor finds the balance due the plaintiff $75.28. On the basis of charging the defendant one-half the commissions he received on those incomplete transactions, and allowing him for his time and expenses in perfecting them, and in delivering to Ruggles after the death of Newell, the auditor finds the balance due the plaintiff $102.97. The counsel of the defendant is right in claiming that the partnership was terminated by the death of Newell. His death however did not operate as a forfeiture of his existing rights. The commissions on these purchases were partly earned before Newell's death, and his representative is therefore entitled to some portion of what the surviving partner ultimately received. The mode adopted by the auditor was to treat the commissions on these inchoate transactions as partnership assets, and allow the defendant for his time and expenses in completing them. This is equitable and just, and we see no reason why it is not legal.

The judgment of the county court for the larger sum is affirmed.