# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF VERMONT.

---

NOAH LATHROP *v.* FRANK G. LEVARN.

October Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed November 10, 1909.

*Adverse Possession—Elements—Intent to Acquire Title—Harmless Error—Discretion of Trial Court—Motion to Set Aside Verdict—Findings of County Court—Conclusiveness.*

The possession and occupancy that will bar the former owner to recover real property must work his disseisin, and to do that, they must have all the elements of adverse possession.

An essential element of adverse possession is the intention to claim title, without that there can be no pretence of adverse possession.

A motion to set aside a verdict as against the weight of the evidence is addressed to the discretion of the trial court, and its ruling thereon is not reviewable.

Error in admitting irrelevant evidence is not reversible where it is manifestly harmless.

When the trial court has the requisite jurisdiction, its findings on evidence tending to support them are conclusive.

TRESPASS QUARE CLAUSUM. Plea, the general issue. Trial by jury at the December Term, 1908, Addison County, *Stanton,*

J., presiding. Verdict and judgment for the defendant. The plaintiff excepted. The opinion states the case.

*Davis & Russell* for the defendant.

Plaintiff's possession, being that of a co-tenant could not be adverse because not constituting an ouster. *Owen* v. *Foster,* 13 Vt. 263; *Roberts* v. *Morgan,* 30 Vt. 319; *Chandler* v. *Ricker,* 49 Vt. 128.

Even though defendant for the requisite period occupied beyond his true line, but claiming to occupy only to the true line, such occupancy would not ripen into title to land beyond the true line. "One who by mistake occupies for 20 years or more land not covered by his deed, with no intention to claim title beyond his actual boundary, wherever that may be, does not thereby acquire title by adverse possession to land beyond the true line." *Shedd* v. *Powers,* 28 Vt. 652; *Prebble* v. *Maine Cent. R. R. Co.,* 85 Me. 260, 27 Atl. 149; *Holmes* v. *Turner's Falls Lumber Co.,* 150 Mass. 535; *Fisher* v. *Meuke,* 82 Iowa, 547; *Rice* v. *Chase et al.,* 74 Vt. 362.

*Frank L. Fish* and *Ira H. LaFleur* for the plaintiff.

The court should have submitted the question of adverse possession by plaintiff. By his possession to the Hazelton line for fifteen years under color of title he acquired title to that line. *Beach* v. *Sutton,* 5 Vt. 209; *Swift* v. *Gage,* 26 Vt. 225; *Hunt* v. *Taylor et al.,* 22 Vt. 556; *Jakeway* v. *Barrett,* 38 Vt. 316.

RowELL, C. J. This is trespass for cutting timber on plaintiff's land in Bristol, situated on the mountain near Bristol Notch, and commonly called the 1500-acre pitch lot. The defendant claimed that the cutting complained of was not on said lot, but west of it on his own land adjoining it; but if it was on said lot, the defendant claimed that he was not liable for it, because it was done by an independent contractor, and so the principal question was as to the location of the west line of the pitch lot. The parties agreed that the northwest corner of the pitch lot and the northeast corner of lot 37, which the defendant claimed to own, were the same, but they disagreed as to the

location, the defendant claiming that it was where the Soper survey of the pitch lot located it about 1829, while the plaintiff claimed that it was at least three rods further west, where the Hazelton survey of the lot located it twenty years ago. The defendant also claimed to own lot 36, which adjoins 37 on the south, and lot 38, which adjoins it on the north.

The jury returned a general verdict for the defendant, which means, as the case was submitted, that none of the cutting complained of was on the pitch lot. The jury also found specially that said corners of the pitch lot and lot 37 are located where the defendant claimed and not where the plaintiff claimed.

It appeared that the defendant had cut considerable timber between the Soper line and the Hazelton line, but that cutting, according to the verdict, was on his own land, or at least, was not on the plaintiff's land. The plaintiff's evidence tended to show that he had done considerable cutting from time to time between those lines, and as far west as the Hazelton line, and he requested the court to charge on the subject of adverse possession that if he went into possession of the pitch lot at the time and in the manner his evidence tended to show, and maintained such possession for the time and in the manner his evidence tended to show, such color of title, accompanied by such possession, gave him absolute title to such undivided portion of the pitch lot as had been so occupied by him under such color of title for fifteen years prior to the alleged trespass. But the court refused to charge as requested, for that the plaintiff's testimony was, as the court recalled it, that he did not claim to recover anything west of the actual line of the pitch lot, which, the court said, would control this matter if he should have made a different claim. To the refusal of the court to charge as requested, and to the charge as given on that point, the plaintiff excepted. Though we think it questionable, we treat the request as applicable to land as far west as the Hazelton line, and consider it accordingly.

The bill of exceptions states that the plaintiff claimed to own under certain deeds that he introduced in evidence, and claimed that the deeds bounded the extent of his claim; that in whatever possession and occupancy he took of the land, he intended, and claimed, to claim only to the extent of his true title wherever it might be. The pitch lot was held in common and undivided.

Now in order for possession and occupancy to set the Statute of Limitations in operation, they must be such in fact that in law they work a disseisin of the owner; and to do that, they must have all the elements of adverse possession. *Davenport* v. *Newton*, 71 Vt. 11, 16, 42 Atl. 1087; and one of those elements, and an essential one, is an intention to claim title. If it is clear—and it is here—that there is no such intention, there can be no pretence of an adverse possession. Angell, Limit., 4th ed., §§384, 390. It is said in *Ewing* v. *Burnet*, 11 Pet. 41, 52, 9 L. Ed. 624, that an entry by one man on the land of another is an ouster of the legal possession arising from the title, or not, according to the intention with which it is made; if under claim and color of right, it is an ouster, otherwise it is a mere trespass; that in legal language the intention guides the entry and fixes its character.

It is said in *Sharon* v. *Tucker*, 144 U. S. 533, 541, 36 L. Ed. 532, 12 Sup. Ct. 720, that the decisions of the courts have determined that the possession that will bar the right of the former owner to recover real property must be open, visible, continuous, and exclusive, with a claim of ownership, such as will notify all parties seeking information on the subject that the premises are not held in subordination to any title or claim of others, but adversely to all titles and all claimants. So in *Harvey* v. *Tyler*, 2 Wall. 328, 349, 17 L. Ed. 871, it is said that when there is no claim of right, the possession cannot be adverse to the true title.

So in *Bond* v. *O'Gara*, 177 Mass. 139, 83 Am. St. Rep. 265, 58 N. E. 275, it is said that adverse possession that will ripen into title must be under a claim of right, or, as it has been thought more accurate to say, with an intention to appropriate and hold the land as owner, and to the exclusion, rightfully or wrongfully, of everyone else.

Our own decisions are to the same effect, though perhaps none of them specifically discuss the necessity of a claim of right, yet they come to the same thing, for they say that the possession must be hostile, and that is equivalent to saying that it must be under a claim of right. *Partch* v. *Spooner*, 57 Vt. 583. In *Whitney* v. *French*, 25 Vt. 663, it is said that in this State we have held that entries by strangers under a claim of right are an eviction of the owner. So in *Jangraw* v. *Mee*, 75 Vt. 211, 54 Atl. 189, 98 Am. St. Rep. 816, it is said to be enough if occupancy

and use are exclusive, open, and notorious, and of a character to indicate to the owner that they are under a claim of right.

Such being the law, the court was right in refusing to charge as requested.   Other objections of more or less merit are urged against the soundness of the request, but they need not be considered, as what we have said sufficiently disposes of the question.

The plaintiff relies upon only three other exceptions taken by him on the trial, namely: (1) to the admission of the deed from Drake to Scott of a part of lot 38, for that it was not in the defendant's chain of title; (2) to the admission of oral evidence of the contents of the contract between the defendant and the independent contractor, for that the loss of the instrument was not sufficiently shown; and (3) to the admission of a certified copy of the record of a deed from Munsill, collector, to Clapp, to show color of title to 37, for that, as appeared by the copy, the deed had no seal.

But it is unnecessary to consider these exceptions, for if error should be found, it would be harmless, as none of them touch any matter relevant to the location of the line in dispute.

The plaintiff moved to set aside the verdict (1) because it was against the weight of evidence, and contrary to, and unsupported by, the evidence, and manifestly wrong, unwarranted, and contrary to instructions; (2) because it appeared by uncontradicted evidence that the plaintiff had occupied the premises in question to the Hazelton line for fifteen years before suit brought, in such a manner that his occupancy gave him ownership and title to said line; and (3) because of the misconduct of certain of the jurymen who sat in the case, and the expression of an opinion by one of them on the merits of the case before trial.

The motion was heard on affidavits and testimony in open court.   The court failed to find the truth of any of the allegations of the first and second grounds of the motion, and found specifically that the jurymen were not guilty of the misconduct alleged in the third ground.

The plaintiff does not really claim that the action of the court on the first ground of the motion is revisable here, for he says he is quite aware that a motion to set aside a verdict as being against  the weight of the evidence is addressed to the

discretion of the trial court, and that its action thereon is not revisable here; but as to the question of the misconduct of the jurymen, the plaintiff says he is not aware of any decision of this Court that forbids a review here, and therefore asks the Court to consider the motion in this respect and the evidence in support of it. But we cannot do that, for our decisions abundantly show that this Court cannot revise the findings of the trial court when it has jurisdiction to find, and finds on legal testimony that tends to prove the issue. *Stevens* v. *Hewitt*, 30 Vt. 262; *West River Bank* v. *Gale*, 42 Vt. 27; *Murdock* v. *Hicks*, 50 Vt. 683; *Phelps* v. *Bellows' Estate*, 53 Vt. 539; *Mullin* v. *Flanders*, 73 Vt. 95, 50 Atl. 813.

The second ground of the motion, treating it as raising the question of adverse possession, presents it in no new light, and therefore what has already been said about it disposes of this branch of the motion.

*Judgment. affirmed.*